

RECEIVED
JAN 27 2017
RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

# Southern District of Ohio

## 85 Marconi Boulevard Columbus, Ohio 43215

Melanise Nixon

Plantiff

Vs.

The Ohio State University Medical Center East

Defendant

Case#: __2:17CV0085__

Judge Marbley

MAGISTRATE JUDGE KEMP

The basis of my lawsuit is unlawful employment practices which resulted in a constructive discharge, violations of The **AMERICAN SPIRIT FRAUD PREVENTION ACT,** failure to provide a **reasonable accommodations, violation of FMLA protections, providing false and misleading information to the Veterans Department of Labor which resulted in case being closed due to misleading information provided by the defendant. Obstruction to benefits earned such as Long term disability insurance, possible insurance fraud since I was authorized to be on FMLA according to the Federal Law at the time I was terminated. My FMLA application covered my Workman's compensation injury. Therefore, in addition to me being terminated after I spent months of working without appropriate Disability accommodations, having my "ADA" support team undermined and in fact sabotaged my management and HR basically transformed my employment into a veiled form of human trafficking. Yes, Human Trafficking.**

I incurred my neck and back injury within six months of returning to work from my deployment. I was being singled out for what I believe to be three reasons (1) my race and gender (2) military status and (3) disability. I will never know fully to what extent these three played individually. However, I do know that failing to accommodate my disability served only to eliminate and isolate me from opportunities of advancement and in doing so created a painfully hierarchy that consistently put me at a disadvantage and subjected me

to public and private ridicule and humiliation on a daily basis during my employment and I acts of retaliation from the "OSU Medical Center" and University continue. The very fact of how I was treated systematically for years is contrary to the core values such a prominent medical and educational institution.

OSU has failed to establish any factual justification that my request for accommodations proved to be a financial hardship. The training I actually received only increased my skills marginally and clearly after approximately two and a half years because I was deployed for nearly one year only highlights management's efforts to implement my training to a glacial pace. Their deliberate efforts directly compromised our national security efforts. I was not technically equipped to assist in a major emergency and this effect was also compounded because I was an active member of the Army Reserves which is dependent on our skills being sharpened through our civilian employers. I specifically asked for opportunities to train at OSU main Campus and was denied. Management systematically blocked and made phony excuses to justify their actions.

OSU has doubled down on their hypocritical pandering to recruit, enslave and exploit military veterans by hosting a job fair this past March 32, 2016 specifically naming the OSU Wexner Medical Center as one of the featured employers.

Furthermore, I was deprived of my Civil Rights and my medical records were and continue to be breached and manipulated compromising my medical care.

I was denied Unemployment benefits and OSU in collaboration with other State Funded Agencies undermined my appeals to gain access to much needed unemployment benefits. In recent years since my termination I have been awarder 50% VA disability and 6% BWC disability for my back. My VA award was back dated to September 2012 which is when I came off my deployment. My former management and HR collaborated before I even came off deployment sending me e-mails while I am deployed to a war zone basically telling me when they expected me back at work. I knew then that my return was to my OSU employment was not heartfelt. The fact that HR and my department manager clearly had significant intelligence concerning troop movement sufficient enough to pinpoint when I was returning home from my deployment which is a breach of military security specific to OPSEC regulations. *Army Regulation 530-1* in addition to
https://en.wikipedia.org/wiki/Operations_security

*"OPSEC" redirects here. For the 501(c)(4) group, see Special Operations OPSEC Education Fund.*

**Operations security (OPSEC)** is a term originating in U.S. military jargon, as a process that identifies critical information to determine if friendly actions can be observed by enemy intelligence, determines if information obtained by adversaries could be interpreted to be useful to them, and then executes selected measures that eliminate or reduce adversary exploitation of friendly critical information.

In a more general sense, **OPSEC is the process of protecting individual pieces of data that could be grouped together to give the bigger picture (called aggregation). OPSEC is the protection of critical information deemed mission essential from military commanders, senior leaders, management or other decision-making bodies.** The process results in the development of countermeasures, which include technical and non-technical measures such as the use of email encryption software, **taking precautions against eavesdropping**, paying close attention to a picture you have taken (such as items in the background), or not talking openly on social media sites **about information on the unit, activity or organization's Critical Information List.**

The information obtained by OSU's HR department and later shared with my former manager was a veiled threat which was later culminated in my dismissal. The information was leaked during a time of war and served no purpose except to violate my privacy and is and was an extension of a war crime that with further investigation may also incorporate other Federal Crimes. Therefore, if the management staff of OSU maintained their focus, duty and efforts to uphold the laws of the land instead of evading their responsibility to OSU as a medical and educational institution instead of carrying out a hidden agenda of structured racism and discrimination. I even had to address the fact that my OSU College transcript had been edited to delete my Military Leave from classes due to military call up for Operation Desert Storm. The pattern is clear and systemic dismantling and manipulation of student, employment and now medical records in a collective effort to devalue my worth, accomplishments and credibility and defraud me of present and future benefits earned or to compromise my eligibility for benefits. We would not be having this legal discourse of their deplorable treatment of me and others if other administrative remedies were more effective and not weakened by OSU fame and influence.

**The months of maltreatment culminated with my VA doctor taking me off work until an appropriate disability accommodation could be provided. Scott Listner heads the OSU Disability Services basically attended at least three meetings which spanned at least a year and I was never provided appropriate accommodations. Therefore, the outcome speaks to his efforts. They basically turned the whole process into a bait and switch and dog and pony show.**

**I had requested time off for military use and falsely informed that I needed to have official "orders". I learned during the Veterans Department of Labor investigation that this was not true. I was only required to give notice. Ironically because I was prevented from taking the time off to investigate medical concerns which I am now being compensated for in addition to others pending re-evaluation. The detection and diagnosis of service connected and presumptive medical conditions have been contracted to OSU Medical Centers by the Columbus VA. I was uneasy about seeking medical care from OSU knowing how badly I had been treated as a Disabled employee and Veteran of two wars. I was subjected to so much humiliation that I took my military deployment photos down because it was a source of veiled mockery and contempt of me. My concerns of my health care being compromised ironically proved to be true.**

**The second opinion I needed to confirm my diagnosis was deliberately delayed and ignored causing my medical discharge from the military to be denied. A medical discharge would have guaranteed me life time medical care free of premiums in addition to immediate**

access to my retirement pay as an Army Reservist. I sent the OSU numerous medical records faxed directly to OSU from the VA's medical record department. The repeated denials of having received information lead me to request my medical records from OSU. I have since learned that my medical records have been compromised. The fact is that the changes in my mental and physical health and financial standing have been compromised by OSU's medical center's unlawful business practices. I am a person with a disability and my military service connected disabilities have been validated to have occurred as early as my release from deployment September of 2012 which if this were known at the time of the Veterans Department of Labor investigation would have also tipped the findings of the investigation in my favor. Furthermore, the fact that I was covered by three distinct classifications of disability coverage's (1) basic ADA disability coverage (2) military service connected disability and (3) Workman's Compensation Disability. My most basic ADA needs were not being met and as a result I was being openly exploited by management and staff members and my efforts to report, advocate and correct the situation only met with more calculated attacks carried out with erroneous and unlawful reporting of the facts.

OSU's calculated effort to justify my termination has scarred my credit and employability options since in their aggressive efforts to ban me have also marked me not only by my gender, race, disability and veteran status have deemed me so unfit that I could not even apply for a custodial position with OSU. I am an Alumnus of OSU and when I get calls and solicitations for financial support it's like ripping a bandage off of an open wound. I find their treatment of me and the laws put in place to ensure that I was given an equal opportunity apparently for OSU management don't apply to me.

OSU's employment practices, policies, and programs which are in clear violation of State and Federal laws have contributed to the following violations:

- Misuse of State and Federal Funds to aid the disabled

- Workforce Innovation and Opportunity Act of 2014
- Violates The **Patient Protection and Affordable Care Act**(PPACA) 2010 HR3590, or **Affordable Care Act (ACA)** for short, is the new health **care** reform law in America and is often called by its nickname **Obamacare**. Because, I was unlawfully denied appropriate care as a Veteran and patient of OSU for treatment of my Workman's Compensation injury and VA referral for Neurological Consultation die presumptive illness to confirm and treat diagnosis. Timely and appropriate diagnosis would have afforded me free health care as a retired disabled service member under Tricare medical insurance.

- VIOLENCE AGAINST WOMEN REAUTHORIZATION ACT OF 2013 * **Sec. 203. Training and services to end violence against women with disabilities grants.**

- FMLA Violations
- * Criminal Acts of Violence According to the Ohio Revised Code*
- 2903.21 Aggravated menacing
- 2905.11 Extortion
- 2905.32 Trafficking in persons
- 2909.24 Terrorism
- 2917.01 Inciting to violence
- 2921.03 Intimidation
- 2921.04 Intimidation of attorney, victim or witness in criminal case or delinquent child action proceeding
- 2903.16 Failing to provide for a functionally impaired person.
- 2903.34 Patient abuse or neglect.
- 2913.01 Theft and fraud general definitions.
- 4729.19 Cooperation in investigation.
- 5923.05 Paid military leave for permanent public employees.
- 4167.01 Public employment risk reduction program definitions.
- 4167.04 Duty of public employer to provide safe place of employment.

- 4731-26-03 Violations, miscellaneous.
- (1) For a physician, massage therapist, or cosmetic therapist. "a departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established," as that clause is used in division (B)(6) of section 4731.22 of the Revised Code.

### 4731-15-02 Healthcare facility reporting requirement.*

(F) Each report shall include:

(1) The name and address of the facility reporting;

(2) The practitioner's name and license number;

(3) The action taken by the facility;

(4) The date of the action taken by the facility;

(5) The effective date of the action taken by the facility; and

(6) A summary of the underlying facts leading to the action.

(G) A facility's timely filing with the board of a copy of the national practitioner data bank adverse action report shall satisfy the reporting requirement of this rule when, upon contact by the board, the reporting facility verifies that the filing of the report has been approved by the peer review committee which reviewed the case or by the governing board of the facility.

* The manager of OSU East Medical Center Pharmacy should have been investigated because of multiple narcotic thefts two if which I was not on duty. The department manager did not provide adequate safeguards through quality training, appropriate staffing conditions and upgrades to security specific to cameras and secured caret for transport did not take place until after the third theft all of which may have been committed by the same person. The police to my knowledge were not notified in a timely fashion when the third theft took place and the primary suspect refused a drug test. I was interviewed by the Security staff and hospital administrator on duty and not Police we called which at the time I just assumed that the Hospital Administrator and security would follow through. However, I now understand was an act to obstruct justice. I was punished for the theft and at the same time I was prevented from speaking with the police when on the day of the theft. The police in addition to security should have been involved at the time of the theft and OSU Pharmacy managers need to train to the standard of the law because their actions compromise the investigation of such a serious crime.

OSU's neglect of these responsibilities contributed to the individuals drug abuse or drug trafficking and could have deprived patients of medications. The thefts spanned two or three years. Therefore, clearly indicating no significant attention was being made to up-date training, policy and procedures nor equipment. The fact that in this day and age the camera surveillance system was installed around 2011 or 2012 during my deployment was not adequate to prevent a second theft in the department around 2013 of 100 Percocet that were being repackaged from a bulk bottle into single dose units. I am only citing the details that I was made aware of from co-workers no formal briefing or training of any significance followed the theft.

The manager basically provided no specific training of any quality and used staff as human shields to escape responsibility for his inability to manage safety and security issues through the development of policies and procedures based on best practices. He also did not actively encourage collaboration among the staff to get a diverse strategy to address the problem. He drafted letters without the endorsement of HR or any OSU policy screening process to require staff sign letters that actually duplicate Hospital policy concerning competency issues. He clearly acted beyond and outside of the scope of OSU's legal review, HR, policy development protocols and instead of addressing his deficiencies as a manager drafted the document to protect his interest otherwise when I met with HR staff Mrs. Malone this would not have come as a shock to her concerning the form staff was asked to sign. The form was not on OSU's letterhead and was a calculated effort to circumvent OSU's formal due process and in doing so served to threaten and intimidate staff. I wonder if he has in fact been asked to sign such documents in this manner. I did inform my ADA lawyer that I had concerns about being subjected to this and he did nothing to advocate for me.

A careful examination of the underlying facts would uncover a history of less than professional management such as the employment of Mrs. Ling. She is the mother or one of the staff technicians who had established a relationship of being a hospital "volunteer". She had no significant pharmacy training other than running the pre-pack machine. She could not speak clear English enough to answer the phone and take messages she was not certified as a pharmacy technician. The motivation behind her being hired was to afford her health care insurance because she was a small business owner as well as her daughter. She and her daughter curried favor with management because of their business dealings. What other motivation is there to hire someone so unqualified. Mrs. Ling was a frustration to the staff because she did not even have the basic skills to qualify for the position and this caused the remaining staff on duty to absorb her duties for the sake of patient care. Ms. Ling was given a

job that she was not qualified for which meant that a qualified applicant was discriminated against in the process.

The pattern of management shifting the responsibility of the leadership responsibilities as "the responsible person". The Ohio Revised code **4729-5-11** clarifies the definition and duties on this person. I made a formal complaint to the Ohio Board of Pharmacy while employed concerning what was going on. Therefore, I pled my case during the dismissal hearing and presented evidence that I had been in contact with the Ohio Board of Pharmacy. I presented evidence of the harassment and discrimination. The hearing officer did not collect any of the evidence I had to present nor was there any commitment on OSU's part to investigate my concerns. They padded their reports and abandon their responsibility to investigate. OSU was only concerned with their agenda which is to circumvent the Spirit and the Letter of the law and exchange the truth for a lie that serves their hidden agenda.

A hidden agenda is the unwritten policy that circumvents the official Policy and procedures. The "alternative policy" that was in effect consisted of the storing of expired meds in a designated collection spot. This practice superseded the written policy of placing the expired meds in a red biological hazard bin. Therefore, a reasonable person might ask why stockpile expired meds instead of disposing of them promptly as described in the policy. The answer is that a company was hired to sort the meds and return products back to various manufactures and in the process OSU would receive some form of credit. I am not sure since OSU is considered to be a State employer that this practice is legal.

I have experience working for Ohio Health and they have a similar practice so I did not find this to be unusual. However, because of the allegation leveled against me OSU's deviation from their written policy cause me to question just how legitimate is this practice. Often times hospital equipment is discarded for various reasons and employees are told that because we are a State employer we have a process in place for employees to purchase old equipment. OSU apparently has a similar system in place to recoup revenue from the expired meds. However, I am not sure of the legal implication of a State institution gaining revenue from expired medications. OSU has an ethical and legal obligation to address this in their written policy because it places employees potentially at risk of being in violation of the law. The storage bin for such items should be lock to prevent unauthorized access which was not the case at OSU during my employment.

Violations of State and Federal Vocational Rehabilitation Policies as defined by:

Title 34: Education

# PART 361—STATE VOCATIONAL REHABILITATION SERVICES PROGRAM

### §361.53 Comparable services and benefits.

(c) *Provision of services.* (1) If comparable services or benefits exist under any other program and are available to the individual at the time needed to ensure the progress of the individual toward achieving the employment outcome in the individual's IPE, the designated State unit must use those comparable services or benefits to meet, in whole or part, the costs of the vocational rehabilitation services.

> (2) If comparable services or benefits exist under any other program, but are not available to the individual at the time needed to ensure the progress of the individual toward achieving the employment outcome in the individual's IPE, the designated State unit must provide vocational rehabilitation services until those comparable services and benefits become available.

(d) *Interagency coordination.* (1) The State plan must assure that the Governor, in consultation with the entity in the State responsible for the vocational rehabilitation program and other appropriate agencies, will ensure that an interagency agreement or other mechanism for interagency coordination takes effect between the designated State vocational rehabilitation unit and any appropriate public entity, including the State entity responsible for administering the State Medicaid program, a public institution of higher education, and a component of the statewide workforce investment system, to ensure the provision of vocational rehabilitation services (other than those services listed in paragraph (b) of this section) that are included in the IPE, including the provision of those vocational rehabilitation services during the pendency of any interagency dispute in accordance with the provisions of paragraph (d)(3)(iii) of this section.

**§361.55, <u>of the individual's input into those reviews, and of the individual's or, if appropriate, the individual's representative's acknowledgment that those reviews were conducted.</u>**

I have stated my complaint and will provide additional documentation as the proceeding unfolds to support my claims. I have on lawyer at this time and according to the documents I was provided indicates that that court can assist me with representation until such time my case will be filed as PRO SE.

### Damages

I am seeking damages for pain and suffering, loss of wages and benefits $500,000. I insist on the financial settlement or award to be adjusted to incorporate the taxes that will be assigned. I want to be removed from the NO Hire list and negotiate alternative employment and or training, clean up my personnel record after formal review. My employment should be reinstated to my former position or position comparable to my qualifications and vocational interest. I want clear and appropriate accommodations for my disability without obstructions to use as needed. I am requesting free use of OSU physical fitness training and use of personal trainers. I am requesting COTA Bus riding privileges activated to my student ID without expiration. Free parking privileges on main campus without expiration. A College trust fund for myself and nieces and nephews which to date specifically refer to Danasha Winfield (13 yrs old), David C. Nixon (1 yrs old) and Shawn Nixon (7months old) and privileges can be extended to two individual of my choice since I do not currently have

children or a spouse. I am asking for the education scholarship apply to enrollment at OSU or Columbus State Community College. I am requesting at this time for the education scholarship to be transferable upon applicants request to any accredited 2 or 4 year College or University and compensated at a rate equivalent to fees currently being charged by OSU at the time of enrollment for on campus residential students. The education scholarship recipient will not be required to live on Campus current circumstances will dictate residential status at the time of enrollment and application. The education scholarship should also allow for vocational training provided by an accredited and reputable program. I am also seeking attorney fees and court cost.

Dated: January 23, 2017

_Melanise A Nixon_

Melanise Annette Nixon, PRO SE

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Melanise A. Nixon<br>2530 Bulen Ave.<br>Columbus, OH 43207 | From: | Cleveland Field Office<br>EEOC, AJC Fed Bldg<br>1240 E 9th St, Ste 3001<br>Cleveland, OH 44199 |
|---|---|---|---|

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 532-2014-02396 | Ms. Blackmon,<br>Investigator | (216) 522-2251 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____     October 30, 2013
for Cheryl Mabry-Thomas,            (Date Mailed)
Director

Enclosures(s)

cc:   Kimberly C. Shumate          Brittany Fitzgibbon
Associate General Counsel        SPIELBERGER LAW GROUP
OHIO STATE MEDICAL CENTER EAST     202 S. Hoover Blvd.
Office of Legal Affairs            Tampa, FL 33609
1590 North High Street, Suite 500
Columbus, OH 43201



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
CLEVELAND FIELD OFFICE
1240 E. NINTH STREET, SUITE 3001
CLEVELAND, OH 44199

Melanise A. Nixon
2530 Bulen Ave.
Columbus, OH 43207

43207$2770 C033

date Mailed cited in notice

arrived in my mail Oct 28